UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Kaci Jo Miller, a minor, by her father and Natural guardian, John Miller, and Nancy Miller and John Miller, individually, | COURT FILE NO.: 01-1973 (RHK/AJB) |
| Plaintiffs, | |
| v. | PETITION FOR APPROVAL OF MINOR'S SETTLEMENT |
| Craig L. Belcourt, M.D., Charles Eisenbeis, M.D., and Anthony J. Giefer, M.D., | |
| Defendants | |

Nancy Miller, as mother and natural guardian of Kaci Jo Miller, a minor, hereby petitions the Court as follows:

1. That Kaci Jo Miller is a minor residing in Riverside County, California, and is 9 years of age with a date of birth of June 15, 1994.

2. That your petitioner is the mother and natural guardian of Kaci Jo Miller, a minor.

3. That Kaci Jo Miller was born on June 15, 1994 at Immanuel-St. Joseph's Hospital in Mankato, Minnesota. It is claimed that Drs. Craig L. Belcourt, Charles Eisenbeis, and Anthony J. Giefer were negligent in their care and treatment of Kaci Jo Miller before, during and after her birth in that

   A. Dr. Belcourt attempted to manage a twin labor and delivery for which he has admitted that he was unqualified by training or experience. He failed to arrange for the immediate referral of this labor and delivery to an obstetrician. He failed to arrange for a Cesarean section delivery of both twins.

   B. Dr. Eisenbeis failed to immediately go to the labor and delivery unit and examine the mother when alerted that she was in labor

SCANNED
JUN 2 3 2004

carrying a twin pregnancy. He failed to recommend to Dr. Belcourt that a Cesarean delivery of both twins be accomplished. He failed to assume management of the breech delivery of twin "B" when he arrived at the labor and delivery unit. He allowed Dr. Belcourt to attempt a breech delivery in a below-standard manner.

C. Drs. Belcourt and Eisenbeis have argued that Dr. Giefer was negligent for failing to initially refer Mrs. Miller to an obstetrician.

4. Your petitioner retained the law firm of Hallberg & McClain and Mark Hallberg to commence a lawsuit on behalf of Kaci Jo Miller.

5. That your Petitioner and defendants Belcourt, Eisenbeis and Giefer are prepared to enter into a settlement agreement and release subject to the approval of this court.

6. That the above-named parties have negotiated a settlement having a present value of Three Hundred Fifty Thousand and no/100 Dollars ($350,000.00), subject to the approval of this Court. The settlement is to be paid as follows:

A. A lump sum payment of One Hundred Ninety Thousand and no/100 Dollars ($190,000.00) at the time of settlement; and

B. Periodic payments of $40,000 at age 20 (06/15/2014), $40,000 at age 22 (06/15/2016), $50,000 at age 25 (06/15/2019), $153,770 at age 30 (06/15/2024), and $153,770 at age 35 (06/15/2029).

A copy of the proposed settlement agreement is attached at Exhibit 1.

7. Your Petitioner retained the law firm of Hallberg & McClain and agreed to pay them compensation of forty percent (40%) of any recovery, together with out-of-pocket costs incurred. A copy of the Retainer Agreement is attached as Exhibit 2. The total attorneys' fees payable under this agreement are One Hundred Forty Thousand and no/100 Dollars ($140,000.00). The total out-of-pocket costs incurred are Seventeen Thousand Thirty-three and 49/100 ($17,033.49). An itemization of out-of-pocket costs is attached at Exhibit 3.

8. Your Petitioner has incurred medical, travel and other expenses associated with Kaci Jo Miller's injuries in the amount of Four Thousand Six Hundred Thirty-five and 40/100 ($4,635.40).

9. Your petitioner believes that the attorney's fee, costs and petitioner's medical, travel and other expenses are fair and reasonable and asks this court authorize payment out of the up-front cash payment. After deduction for the attorney's fee and the expenses, there remains a balance of Twenty-eight Thousand Three Hundred Thirty-one and 11/100 ($28,331.11) from the up-front cash payment.

10. Petitioner advises the court that Connecticut General (CIGNA Health Care) might assert a claim of subrogation for the medical expenses that were paid on behalf of Kaci Jo Miller. However, it is plaintiff's claim that Connecticut General (Cigna Health Care) does not have a right of subrogation because that claim is barred by the expiration of the statute of limitations that applies to the parents' claim.

11. The State of Minnesota, Department of Human Services has paid Four Hundred Twenty-nine and 34/100 Dollars ($429.34) for services provided to Kaci Jo Miller. It is anticipated that the State of Minnesota will seek reimbursement of that amount less a pro rata share of the attorney's fees and costs. Any subrogation claim asserted by the State of Minnesota will be paid out of the funds being held in trust pending satisfaction of all liens.

12. After payment of the attorneys' fees and costs, and Petitioner's expenses, there remains from the lump sum payment for the benefit of the minor the sum of Twenty-eight Thousand Three Hundred Thirty-one and 11/100 ($28,331.11). Said amount will be held in the trust account of Hallberg & McClain, P.A. pending resolution of the subrogation issues. After resolution of the potential subrogation claims, the

remaining balance will be deposited at Bremer Bank, 360 Cedar Street, St. Paul, Minnesota 55101 in an interest-bearing account, certificates of deposit or securities of the United States, which should remain on deposit until the minor's 18th birthday and should not be withdrawn except upon further Order of this Court.

13.  Your Petitioner requests that she and/or her attorney's, Hallberg & McClain, be authorized to withdraw the passbooks, certificate of deposit or other evidence of deposit for the sole purpose of transferring said funds to a higher interest-bearing account within the depository above-named without further Order of this Court and on each occasion, the evidence of deposit shall be returned to the Clerk of Court for safekeeping.

14.  A qualified assignment within the meaning of IRC Section 130 will be made to Prudential Assigned Settlement Service Corporation to make the periodic payments set forth above according to the terms contained in the proposed Order Approving Minor Settlement.

15.  That your Petitioner's attorneys have investigated the facts of this case, have reviewed medical reports and records concerning treatment rendered to Kaci Jo Miller and, considering all aspects of the claim and the nature and extent of the injuries, your Petitioner believes the offer to be fair and reasonable and to be in the best interests of the minor plaintiff.

16.  That Petitioner is ready to execute full and final releases as to the father and natural guardian of plaintiff upon the Court granting approval of this settlement.

WHEREFORE, petitioner prays for an Order of this Court approving the compromise settlement and the disbursement of proceeds and that the petitioner, as parent and natural guardian, be authorized to accept a settlement and to execute full and final releases for all claims arising out of this lawsuit.

Dated this 17th day of June, 2004

_____
NANCY MILLER, Parent and Natural
Guardian of Kaci Jo Miller

Nancy Miller, being first duly sworn on oath, deposes and says that she is the Petitioner in the within Petition; that she has read the same and knows the contents thereof; that the same is true and correct of her own knowledge, except as to those matters stated on information and belief, and as to those matters she believes them to be true.

_____
NANCY MILLER, Parent and Natural
Guardian of Kaci Jo Miller

Subscribed and sworn to before this
This 17th day of June, 2004

_____
(Notary Public)



LANCE KIMBER
COMM. #1301062
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
APRIL 16, 2005

## Consent

John Miller, being first duly sworn on oath, deposes and says that he consents to the within Petition; that he has read the same and knows the contents thereof; that the same is true and correct of his own knowledge, except as to those matters stated on information and belief, and as to those matters he believes them to be true.

*John Miller*
JOHN MILLER, Parent and Natural Guardian of Kaci Jo Miller

Subscribed and sworn to before this
This 17th day of June, 2004

*Lance Kimber*
(Notary Public)



LANCE KIMBER
COMM. #1301062
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Commission Expires
APRIL 16, 2005

## SETTLEMENT AGREEMENT & RELEASE

The parties to, and the consideration for, this Release are as follows:

I.     RELEASORS:     Nancy Miller, individually and as parent and natural guardian of Kaci Jo Miller, a minor

II.     RELEASEES:     Anthony J. Giefer, M.D., Craig Belcort, M.D., and Charles Eisenbeis, M.D., Defendants

III.     PAYOR:     MIDWEST MEDICAL INSURANCE COMPANY, as liability insurer for defendants, Anthony J. Giefer, M.D., Craig Belcort, M.D., and Charles Eisenbeis, M.D.

IV.     CONSIDERATION:
A. Periodic Payments to Kaci Jo Miller (Payee) as follows:
Guaranteed lump sum payments of:
$40,000.00 on June 15, 2014,
$40,000.00 on June 15, 2016,
$50,000.00 on June 15, 2019,
$153,770.00 on June 15, 2024 and
$153,770.00 on June 15, 2029.
These payments are guaranteed, thus should the Payee die before June 15, 2029, then any remaining payment set forth in this Part IV, sub-paragraph A shall instead be paid, when due, to this Payee's estate or to such person or entity as shall be designated by the Payee upon reaching the age of majority. If no person or entity is designated, or if the person designated is not living at the time of the Payee's death, such payments shall be made to the estate of the Payee. No such designation or any revocation thereof, shall be effective unless it is in writing and delivered to the Insurer, or its assignee should an assignment be made. The designation must be in a form acceptable to the Insurer or its assignee before such payments are made.

B. Cash forthwith, payable immediately upon Court approval as follows:
The sum of One Hundred Ninety Thousand and no/100 Dollars ($190,000.00) jointly to Nancy Miller, individually; and their attorneys, Hallberg & McClain, P.A., the receipt and sufficiency of which is hereby acknowledged.

It is understood and agreed that the payments provided under Part IV, sub-paragraph A, cannot be accelerated, deferred, increased or decreased by the RELEASORS or any payee, and, furthermore, RELEASORS or any payee have no power to sell, mortgage, encumber or anticipate payment, or any part thereof, by assignment or otherwise. All payments set forth above constitute damages received on account of personal physical injuries or physical sickness within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

Ex. 1

V.   FULL AND FINAL RELEASE:

In consideration of the payments made or to be made by and on behalf of the PAYOR and defendants, as above stated, the RELEASORS do hereby release said PAYOR and defendants, their heirs, executors, administrators, successors and assigns, officers, agents and employees from any and all actions, causes of action, debts, dues, claims, and demands of every name and nature, both at law and in equity, which against said PAYOR and defendants, and parties released herein, the RELEASORS ever had, now have or may have for or by reason of any matter or thing to the day of the date of these presents, and especially from all claims and demands arising out of any and all personal injuries, damages, expenses, loss or damage, known or unknown, apparent and not apparent, present and future, alleged to have been caused by said PAYOR and defendants, or other parties released herein to the said RELEASORS at any time prior to the date hereof, and which have been asserted in or could have been asserted in a pending law action by RELEASORS against the parties released herein in the United States District Court for the District of Minnesota, Court File No. 01-CV-1973.

VI.   INDEMNITY AND HOLD HARMLESS:

As further consideration for their release, the undersigned RELEASORS acknowledge that CIGNA Healthcare; Connecticut General Life Insurance Company; Anthem Insurance Company, Inc.; and, Medical Assistance from Le Sueur County Human Services have asserted subrogation liens for certain medical expenses incurred which CIGNA Healthcare; Connecticut General Life Insurance Company; Anthem Insurance Company, Inc.; and, Medical Assistance from Le Sueur County Human Services allege is the responsibility of the persons or parties released, which legal liability is disputed and denied. The undersigned RELEASORS acknowledge and agree that the amounts paid pursuant to this agreement are paid in reliance upon the express agreement, representation and warranty that the RELEASORS will fully satisfy any lien asserted by CIGNA Healthcare, either by means of obtaining agreement from CIGNA Healthcare that it's lien claim is barred by the statute of limitations, by obtaining a final court ruling that the lien claim of CIGNA Healthcare is barred by the statute of limitations, or by entering into a compromise settlement agreement with CIGNA Healthcare. In addition, the undersigned RELEASORS hereby agree to accept full responsibility to satisfy all subrogation claims and/or liens asserted by medical insurers or any state or federal agencies of which the parties released hereto are unaware and further agree to indemnify and hold harmless said parties and, if necessary, defend said parties and Midwest Medical Insurance Company for any subrogation claims or liens asserted by the RELEASORS' medical insurers and/or any state or federal agency.

VII.   QUALIFIED ASSIGNMENT:

Within the meaning of Section 130 (c) of the Internal Revenue Code of 1986 (the "Code"), PAYOR, Midwest Medical Insurance Company, may make a "qualified assignment" to Prudential Assigned Settlement Services Corporation (PASSCorp) (the "Assignee"), of PAYOR's obligation to make the future payments described in Part IV, sub-paragraph A, hereof, (the "Periodic Payments") and such assignment releases PAYOR, Midwest Medical Insurance Company, and defendants from all future obligations. If such an assignment is made, the RELEASORS hereby consent to it and agree (a) that ASSIGNEE is not required to set aside specific assets to secure such Periodic Payments, (b) that ASSIGNEE's obligation to make Periodic Payments shall be no greater than those of PAYOR immediately preceding the assignment, and (c) that Periodic Payments from the ASSIGNEE cannot be accelerated, deferred,

SA – Miller – 5-18-04                                   2

increased or decreased by any payee; nor shall the payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments or any part thereof, by assignment or otherwise. Upon assignment, ASSIGNEE, or its designee, shall mail future payments directly to the payee named in this agreement.

PAYOR or ASSIGNEE, if such an assignment is made, may fund the Periodic Payments by purchasing a "qualified funding asset," within the meaning of Section 130 (d) of the Code, in the form of an annuity policy from The Prudential Insurance Company of America (Life Insurance Company). All rights of ownership and control of such an annuity policy shall be vested in the designated ASSIGNEE. PAYOR or ASSIGNEE, if such an assignment is made, for designated ASSIGNEE or PAYOR's convenience, may make, or have The Prudential Insurance Company of America make payments directly to Kaci Jo Miller.

If such an assignment is made, PAYOR shall be fully released from all obligations to make Periodic Payments and only ASSIGNEE shall be obligated to make the Periodic Payments. PAYOR's or ASSIGNEE's obligation to make each Periodic Payment shall be discharged upon mailing of a valid check in the amount due to the address so designated by the RELEASORS. Thirty (30) days prior notice of change of address must be must provided to ASSIGNEE by RELEASORS.

VIII.   CONFIDENTIALITY:
The parties hereunto stipulate and agree that the terms of this Settlement Agreement & Release and the negotiations leading thereto, are confidential and may be revealed only as follows: (1) the amount of this settlement may be revealed in court documents necessary to conclude the settlement; (2) the terms and conditions of the Settlement Agreement and Release may be revealed to spouses, who in turn, agree to keep this information confidential and to be bound by the terms of this agreement; (3) to anonymous reporting to legal publications where neither the names of the parties nor the venue is revealed; and in no other way. This paragraph becomes effective upon the date of the executing of this Settlement Agreement & Release.

IX.   REPRESENTATION & ACKNOWLEDGEMENTS:
That RELEASORS hereby acknowledge that the payments provided for herein are all that will be received for this matter, and no promise for any other or further consideration has been made by anyone.

It is further understood and agreed that this Release represents a settlement as the result of compromise of a doubtful disputed claim, and that the aforesaid payments are not to be construed as an admission of liability on the part of the PAYOR or defendants, or any of them, by whom liability is expressly denied.

It is further agreed that this Release expresses a full and complete settlement of a liability claimed and denied and, that regardless of the adequacy of the compensation or the extent or character of the injuries, known and unknown, there is no agreement on the part of said PAYOR or defendants, or any of them, to make any payment or to do any act or thing other than is herein expressly stated and clearly agreed to.

SA – Miller – 5-18-04                                       3

RELEASORS hereby acknowledge representation by counsel.

RELEASORS further state that we have carefully read the foregoing release and know the contents thereof, and sign the same as our own free act and deed without reliance upon any tax or legal representations made by the parties released herein, or others on their behalf.

All parties agree to cooperate fully and to execute any and all supplementary documents and take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Settlement Agreement & Release, which are not inconsistent with its terms.

This Agreement is effective upon court approval notwithstanding the date of signing hereof.

In presence of:...............................   By:..................................................................
                                                  Nancy Miller, individually, and as parent
                                                  and natural guardian of Kaci Jo Miller, a
                                                  minor

..................................................
Witness

..........................                        ..................
Date                                              Date


In presence of:...............................   HALLBERG & McCLAIN, P.A.


..................................................   By:..................................................................
Witness                                              Mark Hallberg


..........................                        ..................
Date                                              Date


In presence of:...............................   MIDWEST MEDICAL INSURANCE
                                                  COMPANY


..................................................   By:..................................................................
Witness

Date:...............................             Title:..................................................................

SA – Miller – 5-18-04                         4

## Uniform Qualified Assignment and Release

"Claimant"         Kaci Jo Miller, a minor, by and through Nancy Miller her parent and natural guardian

"Assignor"         Midwest Medical Insurance Company

"Assignee"         Prudential Assigned Settlement Services Corporation (PASSCorp)

"Annuity Issuer"   The Prudential Insurance Company of America

"Effective Date"

This Agreement is made and entered into by and between the parties hereto as of the Effective Date with reference to the following facts:

A. Claimant has executed a settlement agreement or release dated _____, 20____ (the "Settlement Agreement") that provides for the Assignor to make certain periodic payments to or for the benefit of the Claimant as stated in Addendum No. 1 (the "Periodic Payments"); and

B. The parties desire to effect a "qualified assignment" within the meaning and subject to the conditions of Section 130(c) of the Internal Revenue Code of 1986 (the "Code").

**NOW, THEREFORE,** in consideration of the foregoing and other good and valuable consideration, the parties agree as follows:

1. The Assignor hereby assigns and the Assignee hereby assumes all of the Assignor's liability to make the Periodic Payments. The Assignee assumes no liability to make any payment not specified in Addendum No. 1.

2. The Periodic Payments constitute damages on account of personal injury or sickness in a case involving physical injury or physical sickness within the meaning of Sections 104(a)(2) and 130(c) of the Code.

3. The Assignee's liability to make the Periodic Payments is no greater than that of the Assignor immediately preceding this Agreement. Assignee is not required to set aside specific assets to secure the Periodic Payments. The Claimant has no rights against the Assignee greater than a general creditor. None of the Periodic Payments may be accelerated, deferred, increased or decreased and may not be anticipated, sold, assigned or encumbered.

4. The obligation assumed by Assignee with respect to any required payment shall be discharged upon the mailing on or before the due date of a valid check in the amount specified to the address of record.

5. This Agreement shall be governed by and interpreted in accordance with the laws of the State of <u>Minnesota</u>.

6. The Assignee may fund the Periodic Payments by purchasing a "qualified funding asset" within the meaning of Section 130(d) of the Code in the form of an annuity contract issued by the Annuity Issuer. All rights of ownership and control of such annuity contract shall be and remain vested in the Assignee exclusively.

7. The Assignee may have the Annuity Issuer send payments under any "qualified funding asset" purchased hereunder directly to the payee(s) specified in Addendum No. 1. Such direction of payments shall be solely for the Assignee's convenience and shall not provide the Claimant or any payee with any rights of ownership or control over the "qualified funding asset" or against the Annuity Issuer.

8. Assignee's liability to make the Periodic Payments shall continue without diminution regardless of any bankruptcy or insolvency of the Assignor.

9. In the event the Settlement Agreement is declared terminated by a court of law or in the event that Section 130(c) of the Code has not been satisfied, this Agreement shall terminate. The Assignee shall then assign ownership of any "qualified funding asset" purchased hereunder to Assignor, and Assignee's liability for the Periodic Payments shall terminate.

10. This Agreement shall be binding upon the respective representatives, heirs, successors and assigns of the Claimant, the Assignor and the Assignee and upon any person or entity that may assert any right hereunder or to any of the Periodic Payments.

11. The Claimant hereby accepts Assignee's assumption of all liability for the Periodic Payments and hereby releases the Assignor from all liability for the Periodic Payments.

**Assignor:** Midwest Medical Insurance Company

**Assignee:** Prudential Assigned Settlement Services Corporation

**By:** _____
Authorized Representative

**By:** _____
Authorized Representative

**Title:** _____

**Title:** _____

**Claimant:** Kaci Jo Miller, a minor, by Nancy Miller as parent and natural guardian

By: _____
Nancy Miller, parent and natural guardian

**Approved as to Form and Content:**

By: _____
Claimant's Attorney

**NSSTA**

National Structured Settlements Trade Association

## Addendum No. 1
## Description of Periodic Payments

Periodic Payments to Kaci Jo Miller (Payee) as follows:
  Guaranteed lump sum payments of:
  $40,000.00 on June 15, 2014,
  $40,000.00 on June 15, 2016,
  $50,000.00 on June 15, 2019,
  $153,770.00 on June 15, 2024 and
  $153,770.00 on June 15, 2029.
  These payments are guaranteed, thus should the Payee die before June 15, 2029, then any remaining payment set forth in this Part IV, sub-paragraph A shall instead be paid, when due, to this Payee's estate or to such person or entity as shall be designated by the Payee upon reaching the age of majority. If no person or entity is designated, or if the person designated is not living at the time of the Payee's death, such payments shall be made to the estate of the Payee. No such designation or any revocation thereof, shall be effective unless it is in writing and delivered to the Assignee. The designation must be in a form acceptable to the Assignee before such payments are made.

Initials
Claimant: _____
Claimant's Atty.: _____
Assignor: _____
Assignee: _____

## RETAINER AGREEMENT

**HALLBERG & McCLAIN, P.A.**                                         380 St. Peter Street, Suite 715
                                                                     St. Paul, MN 55102
                                                                     651-255-6810

1.  **Purpose:** I agree to retain the law firm of Hallberg & McClain, P.A. to be my lawyers and to represent me in a claim for damages arising out of the following circumstances:

Medical care relating to the birth of Kaci Jo Miller on 6/15/94.

2.  **Payment:** I agree to pay Hallberg & McClain, P.A. as and for their attorneys' fees forty percent (40%) of any and all sums collected or monetary benefit obtained for me whether by settlement, verdict or appeal. I understand that the attorneys' fees will be calculated before deductions for expenses and costs incurred by Hallberg & McClain, P.A. and in the handling of my claim.

3.  **Structured Settlement:** If I agree to settle my case on a structured settlement providing for one or more future payments, Hallberg & McClain, P.A. may elect to collect their attorneys' fees at the time of the settlement. Under that circumstance, the attorneys' fees will be forty percent (40%) of the present value of all payments as determined by the fair market value of the premium required to purchase an annuity contract providing all future payments.

4.  **Costs and Expenses:** The firm has authority to incur reasonable costs and expenses in order to investigate and prosecute my claim and I agree that the firm may be reimbursed for said expenses out of any recovery or settlement in addition to their attorneys' fees. In the event I disagree with the firm's recommendation to accept a settlement offer, I agree to be responsible for all costs and expenses in the event my claim is unsuccessful.

5.  **Validity of Claim:** I understand that Hallberg & McClain, P.A. have not told me that I have a valid claim or cause of action because no opinion about the merits of my claim can be formed until the firm has complete their investigation.

6.  **Duties of Law Firm:** The law firm agrees to keep me informed of the status of their investigation and handling of my claim and involve me in all important decisions affecting my claim. I understand that my claim cannot be settled without my permission.

7.  **Withdrawal:** Hallberg & McClain, P.A. reserve the right to withdraw as my attorneys at any time other than such an unreasonably short time period to trial date as to cause actual prejudice. If I decide to terminate this agreement I shall be responsible for reasonable costs and expenses incurred by the firm to the time of termination.

8.  **File Handling:** I agree that the attorney's file in connection with this matter will be retained by Hallberg & McClain, P.A. I will be entitled to request copies of any part thereof and agree to pay any costs of copying. I am entitled to inspect the file during normal business hours at the office of Hallberg & McClain, P.A. At the time the matter is concluded, Hallberg & McClain, P.A. will retain portions of the file in closed files for a period of several years. Medical records will be discarded unless requested by me.

Dated: 2-17-04                                     _____/s/ John Miller_____
                                                   JOHN MILLER

                                                   HALLBERG & McCLAIN, P.A.

Dated: 2/1/04                                      BY: _____/s/ Mark Hallberg_____
                                                   MARK HALLBERG

Ex. 2

## **Out-of-Pocket Costs**

<u>Medical Records</u>
| | |
|---|---:|
| Mankato Clinic | $   46.02 |
| Children's Primary Care | 32.00 |
| North Ridge Family Medicine Clinic | 18.25 |
| University of Minnesota | 99.99 |
| Children's Hospital | 29.75 |
| Immanuel St. Joseph's | 414.57 |

<u>Insurance Records</u>
| | |
|---|---:|
| Anthem Insurance | 25.00 |

<u>Experts</u>
| | |
|---|---:|
| Howard Levine | 675.00 |
| Stephen Smith | 2,100.00 |
| Sixto Guiang | 525.00 |
| LeaRae Keyes, Life Care Planner | 280.00 |
| Charles Driscoll | 1,200.00 |
| Phillip Greig | 875.00 |
| J. C. Warenski | 525.00 |

<u>Court Fees</u>
| | |
|---|---:|
| Filing Fee | 150.00 |

<u>Sheriff's Fees</u>
| | |
|---|---:|
| Service of Process | 83.00 |

<u>Court Reporting Fees</u>
| | |
|---|---:|
| Herbert Peterson & Associates | 1,046.50 |
| Stouten & Associates | 825.25 |
| Video deposition (Dr. Giefer) | 48.99 |

<u>Research</u>
| | |
|---|---:|
| Legal Research | 304.92 |
| Board of Medical Examiners | 50.00 |

<u>Miscellaneous</u>
| | |
|---|---:|
| Off-site photocopying of medical records | 45.20 |
| Night Owl Legal Copy Specialists | 55.64 |

Ex. 3

| | |
|---|---:|
| Video duplication | 32.10 |
| Federal Express | 34.97 |
| Travel Expense (1/28/03 – Mark Hallberg) | 801.50 |
| On Time Delivery | 21.65 |
| Parking | <u>48.79</u> |

Total .................................................................................................. $ 10,394.09

## Hallberg & McClain

**Medical Records**
Rancho PT                                                                              $      15.00

**Physical Therapy Meeting**
Rancho PT                                                                                   150.00

**Expert**
Dr. Philip Greig                                                                          6,274.40
Dr. Stephen Smith                                                                       <u>  200.00</u>

Total .................................................................................................. $  6,639.40